IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| GABRIELA MUÑOZ,<br>Individually and on behalf<br>of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>THOMAS L. CARDELLA &<br>ASSOCIATES, INC.,<br><br>*Defendant*. | §§§§§§§§§§§§§§§§<br><br>No. 2:21-cv-558-KWR-KRS |

## PLAINTIFF'S UNOPPOSED MOTION FOR
## APPROVAL OF FLSA SETTLEMENT

Plaintiff Gabriela Muñoz, individually and on behalf of all current Opt-In Plaintiffs, ("Named Plaintiff") submits this unopposed motion to request approval of the settlement and seek dismissal of Plaintiffs' claims against Defendant Thomas L. Cardella & Associates, Inc. ("TLC") (together with the Named Plaintiff, the "Parties"). Accordingly, Plaintiff respectfully requests that the Court grant this motion and approve the Settlement and Release Agreement ("Agreement") attached as Exhibit 1, or if this Court determines court-approval is not necessary, direct the Parties to file a Stipulation of Dismissal.

### I.   BACKGROUND

Plaintiff Muñoz filed this case on June 16, 2021, as a collective action brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19 and a class action under the New Mexico Minimum Wage Act ("NMMWA"), §§ 50-4-19 *et seq.*, on behalf of herself

and other similarly situated call center employees. *See* ECF No. 1. Through her Original Complaint, Plaintiff Muñoz alleged she, and other similarly situated call center employees, were not paid for all hours worked overtime, in violation of the FLSA and the New Mexico Minimum Wage Act and sought unpaid overtime wages, liquidated damages and attorneys' fees and costs. *Id.* Defendant denied the allegations and raised several affirmative defenses. *See* ECF No. 37.

Plaintiff Muñoz sought (and obtained) conditional certification of a collective action and sent notice out to the Putative Collective Members. By the close of the notice period, 500 individuals had filed their Opt-In Consent Forms to become party plaintiffs in this matter. The Parties engaged in an informal discovery exchange and agreed to participate in an early Judicial Settlement Conference to try to resolve this matter. The Parties were unable to reach a compromise at the initial Settlement Conference but maintained open lines of communication regarding future resolution.

The Parties subsequently engaged in written discovery with both sides exchanging written interrogatories, requests for production, and requests for admission. Because of the size of the collective, it took a substantial amount of time for the collection, review, and production of relevant documents. Over 100,000 pages of bates-labeled documents were exchanged and reviewed. Once production was complete, the Parties agreed to participate in a second Judicial Settlement Conference. In preparation for the conference, Plaintiff provided TLC a demand, and TLC responded. Both Parties communicated in advance of the Judicial Settlement Conference and were able to reach an agreement in principle before the conference itself. The Parties worked collaboratively to draft the Agreement currently

before the Court.

## II.     KEY TERMS OF SETTLEMENT

### A.     Gross Settlement Amount

The Gross Settlement Amount is $450,000.00, which includes the individual settlement payments to be made to Collective Members and attorneys' fees and litigation expenses. *See* Exhibit 1, ¶ I.I.

### B.     Individual Settlement Payments

Collective Members are each receiving a *pro rata* share of the Net Settlement Amount as their Settlement Payments. The Settlement Payment for the Collective Members will be calculated by the Settlement Administrator as follows: (a) the Net Settlement Amount will be divided by the total number of workweeks worked by all Opt-In Plaintiffs during the Claim Period, and then (b) multiplied by the number of Collective Member's respective workweeks during the Claim Period. *See id.* at III.D.ii. The settlement amounts will be allocated fifty percent (50%) to back wages (paid via an IRS Form W-2) and fifty percent (50%) to liquidated damages (paid via IRS Form 1099). *Id.* at III.D.iii. Based on Collective Counsel's expert analysis of the damages in this matter, each Collective Member is receiving over 200% of their alleged unpaid wages. *See* Declaration of Clif Alexander, attached as Exhibit 2.

### C.     Attorneys' Fees and Costs

Subject to Court approval, TLC will pay $225,000.00 of Gross Settlement Amount to Collective Counsel for attorneys' fees and costs incurred to date. *Id.* at ¶ III.C.ii.

### D. Release of Claims

The Collective Members have agreed to a limited release of their claims against TLC, the full text of which is included below:

> M. "Released Claims" means all claims, rights, demands, liabilities, and causes of action that are alleged, or reasonably could have been alleged based on the facts and claims asserted in any version of the complaints, including the Operative Complaint filed the in the *Muñoz* Lawsuit, all suits, actions, causes of action, claims, or demands for unpaid wages (including overtime wages, straight time, or gap time wages), damages, reimbursements, unpaid advances, civil and/or statutory penalties, liquidated damages, treble damages, punitive damages, multiple damages, interest, attorneys' fees, litigation costs, restitution, and/or equitable relief in any way growing out of their work for any Defendant for any and all claims that were, are, or could have been asserted in the Lawsuit or that are based on or arise out of the facts alleged in any version of the complaints filed in the Lawsuit from June 16, 2018 through the Effective Date of the Agreement, including without limitation any claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and any corresponding claims under applicable state law including without limitation under the laws of the State of New Mexico, including claims under the New Mexico Minimum Wage Act.
>
> N. "Released Parties" means Defendant, and its past, present and/or future, direct and/or indirect, officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers.

*Id.* at ¶ I.M–N.

### G. Settlement Administration Timeline

Defendant will fund the first $100,000.00 installment of the Gross Settlement Fund into Qualified Settlement Fund ("QSF") within thirty (30) days after the QSF is established, or on January 15, 2026, whichever is later. *See* ECF No. III.F.ii. The remaining $350,000.00 will be paid in twenty-four (24) equal monthly installments of $14,583.33 per month. *Id.* The Settlement Administrator will mail the Notice Packets with the settlement checks within thirty (30) days of the date TLC fully funds the Gross Settlement Amount.

Each Collective Member will then have sixty (60) days to cash or otherwise negotiate their settlement check. *See id.* at ¶ III.G.ii.

## III.     THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT

District Courts in the Tenth Circuit, including this Court, recognize that the Fair Labor Standards Act ("FLSA") does not require settlements of claims brought under 29 U.S.C. § 216(b). *Daigle v. Turnco Enters., LLC.*, No. 22-CV-0652 SMV/GBW, 2022 WL 3139081, at *2 (D.N.M. Aug. 5, 2022) (recognizing that "Federal Rule of Civil Procedure 23 only requires court approval of settlements of '[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement.'")

> The FLSA does not require judicial approval of settlements of claims brought under 29 U.S.C. § 216(b). *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 403 (2d Cir. 2019). Neither the United States Supreme Court nor the Tenth Circuit Court of Appeals has addressed whether such approval is always necessary. *Id.* at 405–06 (discussing Supreme Court cases); *Riley v. D. Loves Restaurants, LLC*, No. CV 20-1085 WJ/KK, 2021 WL 1310973, at *1 (D.N.M. Apr. 8, 2021). Numerous decisions in this and other districts have acknowledged division in the courts "on the issue of whether private settlements of *bona fide* disputes between employers and employees under the FLSA are valid and enforceable without judicial or Department of Labor ("DOL") approval." *Riley*, 2021 WL 1310973, at *2–4 (collecting cases); *Slaughter v. Sykes Enterprises, Inc.*, No. 17-CV-02038-KLM, 2019 WL 529512, at *1–5 (D. Colo. Feb. 11, 2019) (collecting cases). The "legal landscape" of this issue was comprehensively surveyed in two recent decisions in this district. *Riley*, 2021 WL 1310973, at *4; *Hawthorn v. Fiesta Flooring, LLC*, No. 1:19-CV-00019 WJ/SCY, 2020 WL 3085921, at *1–3 (D.N.M. June 10, 2020). After reviewing the FLSA and the case law, both *Riley* and *Hawthorn* held that "judicial approval is not required for private settlements of claims brought under the FLSA, where the parties' agreement resolves *bona fide* disputes regarding the amount of hours worked or compensation due rather than waiving or releasing the employee's substantive rights under the Act." *Riley*, 2021 WL 1310973, at *4; *Hawthorn*, 2020 WL 3085921, at *3 (same).

*Id.*

Plaintiff therefore files this Motion out of an abundance of caution, and to put forth facts in the record establishing that the Agreement at issue resolves a *bona fide* dispute regarding the amount of hours worked and compensation due (if any). Should this Court be satisfied that the Agreement resolves a *bona fide* dispute between the Parties and determines that dismissal is the appropriate means of resolving this matter, Plaintiff and Defendant are prepared to file a Stipulation of Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). *Id.* at *3 (finding that the agreement at issue resolved a *bona fide* dispute between the Parties and directing them to file a stipulation of dismissal).

    a.    **A Bona Fide Dispute Existed Between the Parties.**

The Agreement resolves a *bona fide* dispute between the Parties. Liability and the amount of damages at issue (if any) have been hotly contested during the four (4) years this case has been on file. Plaintiff maintains that she and the Collective Members were required to work off-the-clock, and without compensation, to complete their necessary "start-up" tasks before being permitted to clock-in each day. Plaintiff further maintained that these start-up activities took five (5) to ten (10) minutes each day. TLC, on the other hand, steadfastly insisted that Plaintiff and Collective Members were instructed to (and did) perform all work on-the-clock, and that any time spent on its computer/hardware systems prior to clocking in was *de minimis*.

Further, this case was settled over four (4) years of litigation, including extensive motion practice, discovery, and work by the Parties and their retained experts. Collective Counsel performed significant research and investigation regarding TLC's pay practices, potential liability, and damages. The Parties worked to resolve various disputed issues, such

as issues regarding certification, the viability of Plaintiff's plead class action claims under New Mexico state law, and damage calculations. Absent resolution there would be significant work to come, including depositions, dispositive motions, class certification/decertification, pretrial motions, trial on the merits, and potential appellate issues.

Each Party performed significant work on this matter, which prepared them to recognize and appreciate the risks of proceeding absent settlement.

### b. The Settlement is Fair and Reasonable.

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Solis v. Top Brass, Inc.*, No. 14-cv-00219-KMT, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014). In determining whether a settlement is fair to the parties in a FLSA collective action, this Court looks at whether the settlement reflects the legal and factual disputes "at play when the settlement was reached while compensating FLSA collective action members with a significant portion of the amount Plaintiffs sought at trial." *Rodarte v. Bd. of Cnty. Comm'rs of Bernalillo Cnty.*, No. 14-CV-193 JAP/SCY, 2015 WL 5090531, at *1 (D.N.M. Aug. 28, 2015).

Should this Court elect to assess this FLSA settlement for fairness and reasonableness, the factors that apply to proposed class action settlements under Rule 23(e) guide the analysis. *Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *4 (D. Kan. Jan. 3, 2017) (citing *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV., 2014 WL 5099423, at *7 (D. Kan. Oct. 10, 2014)). These factors include:

7

(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Id.* "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Id.*

### i. The Agreement was Fairly and Honestly Negotiated

First, the settlement was fairly and honestly negotiated by counsel experienced with FLSA actions. TLC produced data for the Collective Members showing hours worked and compensation received. Plaintiff retained a well-respected expert witness and statistician to created damage calculations based on the pay and time data on behalf of the Collective Members and the Putative Class Members. *See* Exhibit 2. The Parties attended a Settlement Conference with the Honorable Kevin R. Sweazea, United States Magistrate Judge, District of New Mexico on April 9, 2024. Although the Parties did not settle during the April 2024 Settlement Conference, they agreed to resume negotiations after completing formal written discovery. In the eve of the second scheduled Judicial Settlement Conference, the Parties were able to negotiate a compromise. The negotiations by experienced counsel support that the settlement agreement was fairly and honestly negotiated.

### ii. The Ultimate Outcome of the Litigation Remains Unknown

Second, serious questions of law and fact exist as to whether Defendant is liable to

8

the Collective Members and, if so, in what amounts. The Parties dispute not only liability, but the amount of hours worked off-the-clock (if any), and whether that time would be recoverable under 29 U.S.C. § 216(b). The proposed settlement allows the Parties to resolve these matters instead of litigating these uncertain legal and factual issues.

### iii. The Value of the Settlement Is Significant

Third, the immediate recovery offered by the proposed settlement outweighs the potential value of the case if the Parties continued litigating the matter. As mentioned, there are legal and factual uncertainties surrounding liability and damages. If the Parties proceeded to litigate the matter instead of settling, the next steps would require the Parties to engage further in lengthy and costly discovery, disputes and motion practice regarding class certification and decertification, which would likely be followed by cross-motions for summary judgment and potential trial on liability and damages. Instead of undertaking this protracted litigation course which may result in no recovery, the proposed settlement guarantees the Collective Members will receive a substantial recovery. The Collective Members will receive over 200% of their alleged unpaid wages pursuant to the terms of the Agreement. *See id.*

### iv. The Settlement Is Fair and Reasonable

Collective Counsel has comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed Agreement. *See* Exhibit 2. Based on Collective Counsel's knowledge of the case and the applicable law, as well as their experience in numerous similar wage and hour collective actions, Collective Counsel believe the

Agreement is fair and reasonable. *Id*. This factor supports approval of the Settlement. *See Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) ("[T]he district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate."). Additionally, Named Plaintiff approved the terms of the Settlement. *Id*. This supports that the Parties agree the settlement is fair and reasonable.

### v.     The Requested Attorneys' Fees are Reasonable

Fifth, the amount of attorneys' fees requested by Collective Counsel herein are fair and reasonable. The FLSA provides that the Court "shall . . . allow [plaintiff] a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *see Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1308 (10th Cir. 2014); *Robles v. Brake Masters Sys.*, No. CIV 10-0135 JB/WPL, 2011 WL 9717448, at *19, (D.N.M. Jan. 31, 2011); *Tabb v. Mentor Prot. Serv. LLC*, No. CIV-17-1139-D, 2018 WL 5269828 *1 (W.D. Okla. Oct. 23, 2018). Although the fee is mandatory, the Court has discretion to determine the reasonableness of the amount requested. *See Olivo v. Crawford Chevrolet Inc.*, 526 Fed. App'x 852, 855 (10th Cir. 2013). Here, Collective Counsel are seeking to recover $225,000.00 in attorneys' fees and litigation expenses to compensate them for their actual time invested in the case, as addressed in greater detail, *infra*.

## IV.    THE COURT SHOULD APPROVE THE ATTORNEYS' FEES AND COSTS

The FLSA provides "[t]he court … shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *see also Garcia v. Tyson Foods, Inc.*, 770 F.3d

1300, 1308 (10th Cir. 2014). An award of attorneys' fees under the FLSA is mandatory, with the amount of the fees within the discretion of the Court. *See Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 415 n.5 (1978) (an award of fees and costs is "mandatory for prevailing plaintiffs" in FLSA actions); *Olivo v. Crawford Chevrolet Inc.*, 526 Fed. Appx. 852, 854 (10th Cir. 2013) ("As prevailing parties on this claim, plaintiffs were entitled to an award of attorney's fees under 29 U.S.C. § 216(b)"); *Weiser v. Pathway Servs. Inc.*, No. 17-CV-673-GKF-FHM, 2019 WL 6723563, at *1 (N.D. Okla. Aug. 26, 2019) (same); *Ali v. Jerusalem Restaurant, Inc.*, No. 14-CV-00933-MEH, 2015 WL 1345326, at *5 (D. Colo. Mar. 23, 2015) (same). An award is reasonable if it is "adequately compensatory to attract competent counsel yet which avoids a windfall for lawyers." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The starting point in determining the reasonableness of attorneys' fees is the lodestar—"the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1102 (10th Cir. 2010) (citing *Hensley v. Eckerhart,* 461 U.S. 424 (1983)). The party seeking an award of fees must prove both the number of hours spent and reasonableness of the hourly rates. *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000); *Barbosa v. Nat'l Beef Packing Co., LLC*, CIV.A. 12-2311-KHV, 2015 WL 4920292, at *9 (D. Kan. Aug. 18, 2015) ("The fee applicant bears the burden to produce satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."). If this burden is met, a claimant is entitled to the presumption that the

lodestar amount reflects a "reasonable" fee. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

Collective Counsel negotiated their requested fee amount of $225,000.00 to compensate them for their work on this case. This reflects over 955.9 hours of time dedicated to the prosecution of this action. *See* Exhibit 2. Collective Counsel's lodestar in this matter is $581,447.50. Collective Counsel also incurred $37,487.55 in reasonable costs and litigation expenses. *Id.* Detailed information supporting the reasonableness of both the number of hours worked and the rates charged, is contained in the declarations of Clif Alexander. *See id*. Despite having invested $618,935.05 in the litigation of this matter, Collective Counsel is requesting $225,000.00, inclusive of costs and expenses.

Here, Collective Counsel's requested attorney fees and litigation expenses are imminently reasonable considering the hotly contested nature of the litigation, the legal services performed on behalf of the Collective, and the full recovery negotiated for Collective Members in the Agreement.

## V.     CONCLUSION

For all the reasons set forth herein, Plaintiff Muñoz respectfully the Court determine that the Agreement provides for the fair and reasonable resolution of a *bona fide* dispute between the Parties and direct the Parties to file a Stipulation of Dismissal or grant this Motion.

Date: October 3, 2025						Respectfully submitted,


						**ANDERSON ALEXANDER, PLLC**

					By:	/s/ *Clif Alexander*
						**Austin W. Anderson**
						New Mexico Bar No. 20-168
						austin@a2xlaw.com
						**Clif Alexander**
						New Mexico Bar No. 20-178
						clif@a2xlaw.com
						**Lauren E. Braddy**
						New Mexico Bar No. 20-194
						lauren@a2xlaw.com
						**Blayne Fisher**
						New Mexico Bar No. 22-89
						Email: blayne@a2xlaw.com
						101 N. Shoreline Blvd., Suite 610
						Corpus Christi, Texas 78401
						Telephone: (361) 452-1279
						Facsimile: (361) 452-1284

						*Attorneys for Named Plaintiff and Collective Members*

13

## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred with Defendant's counsel of record and Defendant is not opposed to the filing of this motion or the relief requested herein.

*/s/ Clif Alexander*
Clif Alexander

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2025, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court for the District of New Mexico, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Clif Alexander*
Clif Alexander